UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
FILED: 2/28/2020

JEROME BARNETT,

                          Plaintiff,

       -against-

WESTCHESTER COUNTY *et al.*,

                         Defendants.

No. 18-cv-2483 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Jerome Barnett ("Plaintiff"), proceeding *pro se*, commenced this action, pursuant to 42 U.S.C. § 1983, against Defendants Westchester County ("Westchester"), Westchester County Department of Corrections Commissioner Kevin M. Cheverko ("Cheverko"), Aramark Correctional Services, LLC ("Aramark"), Aramark Food Service Director Manual Mendoza ("Mendoza"), and Aramark Kitchen Civilians Charles Butler, Coffey Kohli, Penny Stewart, and Craig Boissy[1] (collectively, "Defendants"). (Compl. (ECF No. 1).) Plaintiff asserts claims related to the food service he received while detained at Westchester County Jail ("WCJ"), alleging violations of (1) the Religious Land Use and Institutionalized Person Act of 2000, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"), (2) the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.* ("RFRA"), and (3) the First, Eighth, and Fourteenth Amendments to the United States Constitution. (*Id.* ¶ 1.)

Presently before the Court is Defendants' motion to dismiss the Complaint. (ECF No. 36.) For the following reasons, the motion is GRANTED.

---

[1] Charles Butler, Coffey Kohli, Penny Stewart, and Craig Boissy are sued herein as "Aramark Kitchen Civilian[s]" "Charles," "Coley," "Penny," and "Craig." (*See* Compl. (ECF No.1).)

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true for purposes of this motion.

Plaintiff, currently incarcerated at Cape Vincent Correctional Facility, (ECF No. 30), is a Baptist inmate who was previously a pretrial detainee at WCJ. (Compl. ¶¶ 2, 14.) Shortly after his arrival at WCJ on or about February 10, 2017, Plaintiff discovered human hair in one of his meals. (*Id.* ¶ 22.) Four days later, Plaintiff misrepresented his religious affiliation as Jewish because, during previous confinements at WCJ, he recalled that Jewish inmates received better quality meals. (*Id.* ¶¶14–15, 20.) Plaintiff states that he purposely waited until after he had received meals that were served to the general population, which he observed as substandard, before requesting Kosher meals. (*Id.* ¶ 16.)

After being assigned to the New Jail Section of WCJ, Plaintiff received several meal trays with foul odors and peeling and cracked plastic. (*Id.* ¶ 17.) The food contained in the trays was cold. (*Id.*) On October 15, 2017, Plaintiff was served undercooked meatballs, causing him to become severely ill. (*Id.* ¶¶ 18–19.) Plaintiff received nausea medication for two weeks following this incident. (*Id.* ¶ 19.) On November 14, 2017, Plaintiff again received undercooked meatballs. (*Id.* ¶ 23.) He filed a formal complaint. (*Id.*) Plaintiff states that he fully appealed his grievance as of the same date. (*Id.* ¶ 24.)

Plaintiff states that a "fellow inmate" claiming to have been employed as an inmate kitchen worker during a recent incarceration told Plaintiff he personally observed Defendants Butler, Kohli, Stewart, and Boissy "allow inmate workers to scream amongst themselves, and across the food preparation table to each other; not enforce food temp[erature]; fail to mandate that inmate workers wear gloves [or] hairnets[; and] fail[] to instruct inmates to properly clean meal trays. (*Id.* ¶ 25.) The fellow inmate further claimed that kitchen workers would leave inmate juice containers

out at night to dry, causing them to become contaminated with rat droppings. (*Id.*) The containers were rinsed but never properly disinfected before their subsequent use. (*Id.*)

Plaintiff states that the WCJ administration believed that inmates were pretending to be Jewish in order to receive a Kosher diet. (*Id.* ¶¶ 26–27.) As a result, WCJ eliminated certain foods such as boiled eggs, butter, sardines, onions, and celery without providing an alternative. (*Id.*) For breakfast, Plaintiff received cornflakes, three slices of bread which were usually stale or moldy, packets of peanut butter and jelly, and fruit which was usually "mushy or beat up." (*Id.* ¶ 27.) Although gefilte fish and salad was offered for lunch, Plaintiff is allergic to fish, so he received an additional peanut butter and jelly sandwich. (*Id.*) For dinner, Plaintiff was served a T.V. dinner with three slices of bread, salad, an apple, and a juice packet. (*Id.*)

Plaintiff also alleges, more generally, that he was served undercooked food, rotted salads, and stale or moldy breads on numerous occasions. (*Id.* ¶ 29.) Moreover, Plaintiff contends he was served at least one meal containing an insect. (*Id.* ¶¶ 29, 31.) Because of the issues with WCJ's food service, Plaintiff states that he regularly suffers fatigue, extreme hunger, nausea, and dehydration.[2] (*Id.* ¶ 30.)

## LEGAL STANDARD

### I.    Rule 12(b)(6)

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

---

[2]    Plaintiff's injuries also included "Significant weight loss," "Unwanted stretch marks," "Extreme stomach pains and cramps," "Vomiting/nausea," "Daily hunger pangs," and "Constant head aches [sic] . . . and . . . fatigue." (Compl. at 14.)

The critical inquiry is whether the plaintiff has pleaded sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In fact, courts must interpret the *pro se* plaintiff's pleadings "to raise the strongest arguments that the suggest." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and a court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## II.    Section 1983

Under Section 1983, "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York.*,

No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

## DISCUSSION

Liberally construed, Plaintiff's Complaint asserts eight claims against Defendants. *First*, Plaintiff brings a *Monell* claim against Westchester and Aramark, based on an alleged failure to properly train and supervise their subordinates and a longstanding pattern of providing substandard food. (Compl. ¶¶ 38–41.) *Second*, Plaintiff brings a First Amendment claim against all Defendants, alleging that Defendants "collectively placed an unnecessary burden" on Plaintiff's religious observance. (*Id.* ¶¶ 42–44.) *Third*, Plaintiff brings claims under RLUIPA and RFRA against all Defendants, again based on the alleged interference with Plaintiff's religious beliefs. (*Id.* ¶¶ 45–50.) *Fourth*, Plaintiff states a claim of deliberate indifference to his conditions of confinement against all Defendants under the Fourteenth Amendment.[3] (*Id.* ¶¶ 51–52.) *Fifth*, Plaintiff sets forth a claim for supervisory liability against Defendant Cheverko,[4] which is premised on his alleged failure to intervene. (*Id.* ¶¶ 53–55.) *Finally*, Plaintiff alleges deprivation of his rights under the Equal Protection Clause against all Defendants. (*Id.* ¶¶ 56–62.)

The Court addresses these claims below.

## I.     Municipal Liability of Westchester and Aramark

Plaintiff's Complaint appears to bring *Monell* claims under two theories: failure to train and an unofficial policy. (Compl. ¶¶ 39–40.) In response, Defendants contend that Plaintiff has failed to allege facts that support conduct that amounted to a custom or policy under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978). (Defs. Mem. of Law in Support

---

[3]     Although Plaintiff states that this claim is brought under the Eighth Amendment, a "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

[4]     Plaintiff does not specifically state a claim for supervisory liability against Defendant Mendoza. However, given Plaintiff's reference to Mendoza's oversight responsibilities and to a complaint letter Plaintiff sent to Mendoza, (Compl. ¶¶ 6, 35), the Court considers whether such a claim is viable herein.

of Mot. to Dismiss ("Defs. Mot.") (ECF No. 37) at 15–18.) The Court agrees.

A municipality, or private actor engaged in governmental action,[5] may not be held liable under Section 1983 on a *respondeat superior* theory solely because the municipality employs a tortfeasor. *Monell*, 436 U.S. at 691. Therefore, under *Monell*, a plaintiff must demonstrate "that the municipality itself caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). This generally requires a plaintiff to allege that "(1) an official custom or policy [] (2) subjected [him or her] to (3) a denial of a constitutional right." *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."). To establish an official custom or policy, a plaintiff must allege

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*White v. Westchester Cty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

---

[5]  Courts that have considered the issue have found that Aramark, in its capacity as a food provider at WCJ, can be viewed as a state actor for purposes of assessing *Monell* liability. *See, e.g.*, *Pagan v. Westchester Cty.*, No. 12 Civ. 7669(PAE)(JCF), 2014 WL 982876, at *23–24 (S.D.N.Y. Mar. 12, 2014). Indeed, this Court has previously explained that (1) "Aramark's 'seemingly private' behavior can be treated as that of the state given that the challenged action, proper food service, flows directly from the obligations of the government entity and is performed under its supervision," and (2) "Aramark, by providing meals to inmates, performs a 'public function' and therefore is a state actor." *Salgado v. DuBois*, No. 17-cv-6040 (NSR), 2019 WL 1409808, at *9 (S.D.N.Y. Mar. 28, 2019). The Court need not further explore this issue at this time because Aramark has permitted the Court to treat it as a state actor for purpose of this motion only. (Defs. Mot. 16.)

If a plaintiff is premising *Monell* liability on an unofficial policy or custom, the practice, custom, or usage must be so widespread and so persistent that it has the force of law. *Goode v. Westchester Cty.*, No. 18-cv-2963 (NSR), 2019 WL 2250278, at *3 (S.D.N.Y. May 24, 2019). On the other hand, where municipal liability is based on a failure to train employees, the inadequate training must "reflect[] deliberate indifference to . . . constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). To prove deliberate indifference, a plaintiff must properly plead (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)).

Plaintiff first tries to establish that Westchester (and, it appears, Aramark) "failed to properly train[] and supervise its subordinates and/or contractors to ensure that foods were being served in full satisfaction of established federal and state laws." (Compl. ¶ 39.) This statement is nothing more than a conclusory allegation, which is plainly "insufficient to state a *Monell* claim." *Davis v. City of New York*, No. 07 Civ. 1395(RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008). Plaintiff next tries to establish a consistent and widespread practice by alleging that Westchester and Aramark "allowed for a longstanding pattern of substandard food" at WCJ and "failed to ensure that religious meals met religious requirements and were adequate in nutrition." (Compl. ¶ 40.) The law is clear, however, that it is not enough to simply allege that a municipal policy or custom exists. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

Given these pleading deficiencies, the Complaint directs the Court to a prior lawsuit[6] which settled without any admission of liability. (Compl. ¶ 36 (citing *Pagan v. Westchester Cty.*, No. 1:12-cv-7669-PAE-SN (S.D.N.Y. Oct. 12, 2012)).[7] Plaintiff points to this lawsuit to establish an inference of either a failure to train or the existence of an unofficial policy, stating that in *Pagan*, "[h]igher ranking officials" were "made aware of similar allegations regarding substandard food being served at the jail . . . but failed to take any investigatory, corrective action." (*Id.* ¶ 37.) The Court concludes, however, that *Pagan* fails to remedy Plaintiff's deficient *Monell* claim.

*First*, mere citations to lawsuits, even if they did involve comparable conduct, do not alone establish a custom or practice that is widespread and persistent, particularly when the lawsuits did not result in an adjudication of liability. *See An v. City of New York*, 230 F. Supp. 3d 224, 229–30 (S.D.N.Y. 2017) ("Plaintiff cites six lawsuits filed between 2012 and 2016 and one newspaper report. But the Complaint fails to allege that any of the six lawsuits, which were filed over a course of four years, resulted in a finding that the NYPD officers violated the plaintiffs' First Amendment rights."); *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (explaining that lawsuits cited by plaintiff in a proposed amended complaint were insufficient to support an inference of a widespread custom).

*Second*, although citations to lawsuits could, in some cases, "'permit a plausible inference' of deliberate indifference," *Osterhoudt v. City of New York*, No. 10 CV 3173(RJD)(RML), 2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) (citing *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011)), Plaintiff does not allege any facts establishing that any alleged abuses in

---

[6]    Plaintiff also makes a passing reference to a second lawsuit, which also settled without any admission of liability. (Compl. at 5 (citing *Perez v. Westchester Cty.*, No. 1:05-cv-8120-RMB-DCF (S.D.N.Y. Sept. 20, 2005)). Plaintiff provides no discernable basis for the Court's consideration of *Perez*. To the extent Plaintiff intended to point to *Perez* to bolster his *Monell* claim, *Perez* fails to remedy Plaintiff's deficient *Monell* claim for the same reasons as *Pagan*, as discussed herein.

[7]    As Defendants note, this Court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).

the prior lawsuit "were caused by a failure to train officers in the proper handling" of the food issues alleged in his Complaint. *See, e.g.*, *Vincent v. Winski*, No. 14-CV-7744 (VSB), 2018 WL 1441370, at *17 (S.D.N.Y. ) (granting defendants' motion to dismiss *Monell* claims where "the only facts that Plaintiff identifie[d] in support of any pattern of mishandling situations because of a failure to train . . . consist[ed] of other litigations resulting in settlements"). Nor does Plaintiff specify Defendants' responses to the lawsuit. *See Falls v. Campbell*, No. 17-CV-35 (KMK), 2019 WL 1255768, at *7 (S.D.N.Y. Mar. 19, 2019) ("A litany of prior lawsuits may suffice to put the [County] on notice that greater training, supervision, or officer discipline was needed, but [P]laintiff makes only conclusory allegations regarding the [County]'s response to the lawsuits." (quoting *Falls v. Orange Cty.*, No. 17-CV-1339 (VB), 2018 WL 718417, at *4 (S.D.N.Y. Feb. 5, 2018)). In any event, the existence of a single lawsuit filed over seven years ago—and almost six years prior to the initiation of the present lawsuit—does not strike this Court as enough to plausibly allege an obvious need to act on the part of Westchester or Aramark. *See An*, 230 F. Supp. 3d at 231 ("[T]he six lawsuits and one newspaper article over the span of four years is insufficient to plausibly allege the need [to act that] was obvious.").

In sum, Plaintiff has failed to adequately allege the existence of an official policy or its equivalent, such that the Court cannot impose liability upon Westchester and Aramark under *Monell*. The Court GRANTS Defendants' motion to dismiss Plaintiff's claims against Defendants Westchester and Aramark, as well as those individual defendants sued in their official capacities, without prejudice and with leave to replead.

## II.    <u>Individual Liability</u>

Plaintiff names six individual Defendants in his Complaint, all of whom appear to occupy supervisory roles at WCJ. (Compl. ¶¶ 5–10.) In seeking dismissal, Defendants argue that Plaintiff

has failed to make any factual allegation implicating the individually named Defendants. (Defs. Mot. 14–15.) The Court agrees.

In general, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he [or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). Personal involvement of a supervisory defendant may be shown by evidence of any of the following factors (the "*Colon* factors"):

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[8] Notably, "mere 'knowledge and acquiescence'" to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim under Section 1983. *Faulk v. N.Y.C. Dep't of Cor.*, No. 08-CV-1668(LGS), 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement."). Furthermore, dismissal is typically warranted where a Plaintiff

---

[8]     Although there is a split in authority, "[t]he majority of the district courts [in this circuit] . . . have held that, absent any contrary directive from the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 07, 2017) (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)) (collecting cases). This Court has already expressed its agreement with that proposition and will apply it with equal force here. *See Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *11 (S.D.N.Y. Mar. 31, 2018); *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018). In accordance with its prior decisions, this Court will apply all five *Colon* factors.

"fails to make any factual allegations" against individually named defendants, and instead "only generally alleges" violations by staff or employees. *See Hoffstead v. Aramark Corr. Servs., LLC*, No. 18 CV 2381 (VB), 2019 WL 1331634, at *3 (S.D.N.Y. Mar. 25, 2019) (dismissing claims against individual defendants where "Plaintiff fail[ed] to make any factual allegations against [the named defendants]" and "only generally allege[d] throughout his complaint that 'Aramark's staff' and 'kitchen staff' served him food to which he was allergic").

Here, Plaintiff states that an unnamed former inmate kitchen worker observed Defendants Butler, Kohli, Stewart and Boissy permitting yelling during food preparation and not enforcing rules pertaining to hygiene, food temperature, tray washing, and cleaning juice containers. However, Plaintiff suggests that this took place approximately two months prior to his arrival.[9] Plaintiff does not allege that the improper conduct described continued during the time he received meals at WCJ. Accordingly, Plaintiff fails to connect that conduct to the specific violations alleged in the Complaint. Plaintiff has not plausibly alleged that the foregoing Defendants were personally involved in the violations.

As to Defendant Cheverko, Plaintiff alleges that he "deliberately violated [Plaintiff's constitutional rights" by "turn[ing] [a] blind eye to the misconduct" alleged in the Complaint. (Compl. ¶ 54.) This statement is plainly conclusory, and therefore cannot support an allegation of supervisory liability against Cheverko. Plaintiff further states that Cheverko was made aware of the conduct alleged in the Complaint because of his involvement in the *Pagan* litigation. (*Id.* ¶ 34.) However, Plaintiff provides no explanation as to how Cheverko's involvement with *Pagan*,

---

[9]    Plaintiff states that the unidentified inmate made his observations while working in the kitchen "approx. 2 [] months [sic] prior," but does not say what date that was prior to. (Compl. ¶ 25.) Since this statement is made immediately after Plaintiff's assertion that he was housed in "the 3-N-W housing unit," (*id.*), the housing unit to which Plaintiff was assigned shortly after his arrival at WCJ, (*see id.* ¶ 17), the Court infers that "2 [] months [sic] prior" means two months prior to Plaintiff's arrival at WCJ.

which consisted of him being "deposed," (*id.* ¶ 34), would have put Cheverko on notice of Plaintiff's current allegations.

Finally, Plaintiff claims that he filed a "complaint letter" upon both Cheverko and Defendant Mendoza. (*Id.* ¶ 35.) Cheverko and Mendoza's receipt of a complaint letter from Plaintiff does not, by itself, suffice to establish personal involvement. "Ample Second Circuit case law makes clear that a Plaintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 637 (S.D.N.Y. 2016) (citations omitted). Mere "knowledge and acquiescence" to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim against a Section 1983 defendant. *Faulk v. N.Y. City Dep' t of Corr.*, No. 08-CV-01668(LGS), 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014) (citing *Iqbal* , 556 U.S. at 677); *Sanders v. City of N.Y.*, No. 14-CV-6156, 2016 WL 1023318, at *3 (S.D.N.Y. Mar. 8, 2016); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (New York State Department of Corrections and Community Supervision Commissioner was not personally involved simply because Plaintiff wrote complaint letters to him); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement."). It appears that Cheverko and Mendoza have been sued because of the "bare fact" that they "occup[y] a high position" at WCJ, which is plainly insufficient to sustain a claim. *Colon*, 58 F.3d at 874.

In conclusion, Plaintiff has failed to establish the personal involvement of any of the individual defendants named in the Complaint. Accordingly, the Court GRANTS Defendants' motion to dismiss any claims alleged against Defendants Butler, Kohli, Stewart, Boissy, Cheverko, and Mendoza without prejudice and with leave to replead.[10]

---

[10]    The above-discussed deficiencies also prove fatal to any "failure to intervene" claim against these Defendants, which appears to be premised on Defendants' alleged awareness of lawsuits and current grievances, (*see* Compl. ¶ 52), regarding the issues at WCJ. The Court reiterates that the receipt of grievances is not enough to establish even personal involvement, let alone deliberate indifference, *see Mateo*, 682 F.

### III. Sufficiency of Plaintiff's Claims

Even if the Court had concluded that Plaintiff established the personal involvement of the individual defendants or that Westchester County and Aramark could be held liable under *Monell*, it would still conclude that Plaintiff has failed to state any claim upon which relief can be granted.[11]

#### A. Free Exercise Claim

Plaintiff alleges that Defendants "collectively placed an unnecessary burden upon Plaintiff['s] religion[] and deprived [him] of [his] right to freedom of religion." (Compl. ¶ 43.) Defendants, conversely, maintain that Plaintiff has failed to allege facts that plausibly establish that his sincerely held beliefs were substantially burdened. (Defs. Mot. 23–25.) The Court agrees.

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience.'" *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). The protection extends to prisoners, who have "'long been understood to retain some measure of' their rights under the Free Exercise Clause." *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (quoting *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)). One such protection is a prisoner's "right to a diet consistent with [the inmate's] religious scruples." *Barry v. LaManna*, No. 19 CV 4189 (VB), 2019 WL 6790515, at *3 (quoting *Ford*, 352 F.3d at 59).

Nevertheless, "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Salahuddin*

---

Supp. 2d at 430, and further notes that the mere existence of prior lawsuits, without more, does not establish deliberate indifference, *see Constant v. Prack*, No. 16-cv-3985 (NSR), 2019 WL 3287818, at *9 (S.D.N.Y. July 19, 2019) (explaining that "a mere reference to three dismissed lawsuits over the course of twelve years" did not establish awareness "of a longstanding history of prior inmate-on-inmate attacks like the one experienced by Plaintiff").

[11]    Because Plaintiff is no longer detained at WCJ, he is not entitled to declaratory and injunctive relief related to any past misconduct of state officials. *See Li v. Lorenzo*, 712 F. App'x 21, 23 (2d Cir. 2017) (explaining that neither injunctive nor declaratory relief are available for injuries "stemming only from past conduct" that is not still ongoing). Any claims for declaratory or injunctive relief are therefore DISMISSED with prejudice.

*v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotations and citations omitted). As such, a prisoner's rights under the First Amendment "must be balanced against the 'interest of prison officials charged with complex duties arising from administration of the penal system.'" *Kinter*, 938 F.3d at 32 (quoting *Ford*, 352 F.3d at 588).

To establish a free exercise claim, an inmate must typically plead that he or she had a sincerely held religious belief that was substantially burdened by conduct that was not reasonably related to a legitimate penological interest.[12] *Corbett v. Annucci*, No. 16-cv-4492 (NSR), 2018 WL 919832, at *3 (S.D.N.Y. Feb. 13, 2018) (citing *Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18, 2016); *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014)). "[A]n individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 558.

Here, Plaintiff has not alleged that he has a sincerely held religious belief that was violated by the quality of meals he received. On the contrary, Plaintiff openly admits that he pretended to be Jewish only so that he could receive what he thought would be higher quality meals. (Compl. ¶¶ 14–15.) Accordingly, Plaintiff has failed to state a claim related to a violation of his First Amendment rights. The Court GRANTS Defendants' motion to dismiss Plaintiff's free exercise claim, without prejudice and with leave to amend.

### B. Deliberate Indifference/Failure to Intervene Claims

Liberally construed, Plaintiff's Complaint brings a conditions-of-confinement claim against Defendants based on the condition of the food served to him while he was detained at WCJ.

---

[12]  The Second Circuit "has not yet decided whether the substantial burden requirement remains good law after the Supreme Court's decision" in *Employment Division v. Smith*, 494 U.S. 872, 887 (1990). *Kinter*, 938 F.3d at 32 n.7. Rather, it typically has assumed the issue, without deciding, "by noting either that the parties did not brief the issue or that the requirement, even if applied, would have been satisfied." *Id.* (citing *Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016); *Holland*, 758 F.3d at 220; *Ford*, 352 F.3d at 588). The Court need not resolve the viability of the substantial burden requirement at this time.

(*See* Compl. ¶¶ 51–52.)   Specifically, Plaintiff alleges that Defendants were deliberately indifferent to, and/or failed to intervene to prevent, the purportedly deplorable food issues at WCJ. (*Id.*)  Defendants, however, contend that Plaintiff has failed to allege the food issues he experienced were sufficiently serious or that Defendants acted with the requisite mindset when imposing, or failing to correct, any alleged condition.  (Defs. Mot. 18–22.)  Although Plaintiff has pleaded a sufficiently serious condition, the Court agrees that Plaintiff has failed to plead the requisite *mens rea* element of his deliberate indifference claim.

To set forth a Section 1983 conditions-of-confinement claim under the Fourteenth Amendment, a plaintiff must show that an individual "acted with deliberate indifference to the challenged conditions."  *See Sanders v. City of New York,* No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018).  This deliberate indifference test for a pretrial detainee contains an objective prong and a subject prong.  *Darnell*, 849 F.3d at 29.

The objective prong requires that the "deprivation at issue be, 'in objective terms, sufficiently serious.'"  *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *9 (S.D.N.Y. Sept. 18, 2019).   A plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Darnell*, 849 F.3d at 30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'"  *Id.* at 29 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).

As relevant here, the Constitution "require[s] that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'"  *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981)).  Courts have held that "allegations that a prisoner was served food

contaminated or tainted by foreign objects" may satisfy the objective prong of the deliberate indifference test. *See Crispin v. Westchester Cty.*, No. 18 CV 7561 (VB), 2019 WL 2419661, at *3 (S.D.N.Y. June 10, 2019) (quoting *Ballard v. Lane*, No. 18-cv-1721 (AJN), 2019 WL 1129158, at *2 (S.D.N.Y. Mar. 12, 2019)).

Under the subjective prong, "a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Strange v. Westchester Cty. Dep't of Corr.*, No. 17-CV-9968 (NSR), 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (internal quotations omitted). This standard is "defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts . . . have subjected the detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 30.

While Plaintiff's complaints as to the lack of variety in his meals do not amount to a constitutionally serious harm, Plaintiff also alleges that he received undercooked meals on at least two specific occasions, and rotted salads and stale, moldy bread on ten other occasions. (Compl. ¶¶18, 23, 29.) He further states that on at least one occasion,[13] he found insects in his meal, and on a second occasion, he found a strand of hair in his meal. (*Id.* ¶¶ 22, 29, 31.) Finally, Plaintiff states that he was forced to seek medical treatment for his ailments, which included, *inter alia*, weight loss, stomach pains and cramps, vomiting/nausea, daily hunger pangs, and constant headaches and fatigue. (*Id.* at 14.) Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has sufficiently alleged that he was exposed to conditions that "plausibly posed an unreasonable risk of serious damage to [P]laintiff's health." *See, e.g.*, *Adeghe v. Westchester Cty.*, No. 18 CV 7912 (VB), 2019 WL 4142470, at *3 (S.D.N.Y. Aug. 30, 2019)

---

[13]    It is insufficiently clear based on the language of the Complaint whether Plaintiff is claiming to have found insects in his food on other occasions, (*see* Compl. ¶ 29.)

(concluding that plaintiff satisfied objective prong of deliberate indifference test by alleging that "he was served food contaminated with plastic tray chippings, hair, flies, and mold; that his food was undercooked, and that he has been consistently ill as a result of the food, including suffering diarrhea, vomiting, fatigue, and more"); *Crispin*, 2019 WL 2419661 at *3 (concluding that plaintiff satisfied objective prong of deliberate indifference test by alleging (1) "that on at least twenty occasions, his meal tray contained raw and bloody meat—food that is nutritionally inadequate, to say the least," (2) that "he was served food contaminated with mold and tainted with plastic chips," both resulting in various ailments).

Plaintiff, however, has failed to meet the subjective prong of the deliberate indifference test. Plaintiff claims that Defendants were "fully aware of the constitutional violations occurring at WCJ[] but failed to intervene." (Compl. ¶ 52.) In support of this assertion, Plaintiff references informal complaints he made regarding the state of his meal trays and undercooked meat, (*id.* ¶¶17–18), and formal grievances he filed regarding one episode of undercooked meat and one incidence of finding an insect in his salad, (*id.* ¶¶ 23, 32). Plaintiff also avers in conclusory terms that most of the conditions he complains of were "personally observed and recorded by Correctional staff." (*Id.* ¶ 17.)

However, Plaintiff does not state whether any of the named Defendants were specifically aware of the allegedly inadequate food, whether any of the Defendants provided Plaintiff the inadequate food, or whether Defendants knew of specific instances where Plaintiff was served the problematic food about which he complains. *See Adeghe*, 2019 WL 4142470 at *4 (explaining that plaintiff's "allegations do not, however, suggest any defendant acted with deliberate indifference in serving plaintiff the allegedly inadequate food" and did not suggest that "any defendant prepared or served plaintiff the food that made him sick, was present on the occasions when plaintiff was served that food, or knew of any instance on which plaintiff was allegedly

served inadequate food either before or after the fact); *cf. Salgado*, 2019 WL 1409808 at *11 (explaining that plaintiff had plausibly alleged a sufficiently culpable state of mind because it alleged that defendant "as the food service provider who was 'responsible for the food [the inmates] eat at [the] facility' and who sells the facility the food . . . would have been aware that the food was insufficient in quantity and tainted in quality and that these defects would pose an excessive risk to the health of the inmates").

Since Plaintiff has not provided any factual information that would implicate Defendants' objective mental state, his deliberate indifference claim fails. Accordingly, the Court GRANTS Defendants' motion to dismiss that claim without prejudice and with leave to replead.

### C. Equal Protection Claim

Although Plaintiff lists discrimination and equal protection as two separate counts, the Court construes the Complaint as asserting a single equal protection claim premised on purported religious discrimination. (Compl. ¶¶ 56–62.) In response, Defendants counter that Plaintiff has failed to provide facts indicating that he was "treated differently from other inmates on the basis of his religion with regard to the service of food." (Defs. Mot. 25.) The Court agrees.

Under the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (internal quotations marks omitted) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). To state a violation, "a plaintiff must allege 'that he [or she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 590–91 (S.D.N.Y. 2015) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).

Here, Plaintiff first alleges that Defendants treated Plaintiff "differently compared to the treatment that other religions received at WCJ." (Compl. ¶ 57.) But aside from this stray conclusory statement, Plaintiff fails to offer any allegations that reveal intentional discrimination or disparate effects/treatment. A few paragraphs later, Plaintiff avers that Defendants "treated Jewish inmates different from other religions." (*Id.* ¶ 61.) Such a passing reference, however, "fails to describe how the treatment of those groups differs from the treatment provided to Plaintiff." *Corbett*, 2018 WL 919832 at *4. Without more facts to support his threadbare allegations, Plaintiff has failed to state an equal protection claim. The Court GRANTS Defendants' motion to dismiss that claim, without prejudice and with leave to replead.

### D. RLUIPA Claims

Plaintiff charges Defendant with violations of RLUIPA. (Compl. ¶¶ 45–47.) Whether Plaintiff seeks monetary or declaratory/injunctive relief, his RLUIPA claim must be dismissed.

*First*, RLUIPA "does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Ross v. Aramark Corp.*, No. 18 CV 2246 (VB), 2019 WL 1172383, at *6 (S.D.N.Y. Mar. 13, 2019) (quoting *Holland*, 758 F.3d at 224). Accordingly, Plaintiff's claim for monetary damages under RLUIPA fails. *Second*, "[a]n inmate's transfer from a prison generally moots claims for declaratory and injunctive relief against officials at that facility." *Keitt v. Hawk*, No. 9:13-cv-850 (GLS/ATB), 2015 WL 1246058, at *11 (N.D.N.Y. Mar. 18, 2015) (citing *Salahuddin*, 467 F.3d at 272).

Plaintiff is now an inmate at Cape Vincent Correctional Facility. (ECF No. 30.) Thus, to the extent he seeks injunctive or declaratory relief, Plaintiff's RLUIPA claim is now moot. The Court GRANTS Defendants' motion to dismiss Plaintiff's RLUIPA claim, with prejudice.

**E. RFRA Claims**

Plaintiff asserts a claim under RFRA based on Defendants' alleged violation of Plaintiff's religious freedom. (Compl. ¶¶ 48–50.) However, the Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507 (1997), "invalidated RFRA as applied to States and their subdivisions." *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005) (citing *City of Boerne*, 521 U.S. at 532–36). Defendants' motion to dismiss Plaintiff's RFRA claim is GRANTED, with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff is granted leave to file an Amended Complaint as to any claims that have not been dismissed with prejudice. If he chooses to do so, Plaintiff will have until April 9, 2020 to file an Amended Complaint consistent with this Opinion and Order. An Amended Civil Rights Complaint form is attached to this Order. Defendants are then directed to answer or otherwise respond by May 25, 2020. Failure to file an Amended Complaint within the time allowed, and without good cause to excuse such failure, will result in dismissal of Plaintiff's Complaint with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 36. The Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF and to file proof of service on the docket.

Dated: February 2₿ 2020  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

# COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                Middle Initial           Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                        State                Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☐  Convicted and sentenced prisoner

☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 4:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____                    _____
Dated                                               Plaintiff's Signature

_____
First Name                       Middle Initial     Last Name

_____
Prison Address

_____
County, City                              State                  Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:   _____